Mathias Freres, Defendant in Error, v. Fred Santware et al., Plaintiffs in Error.

## Gen. No. 15,375.

DECREES—*when not disturbed.* A decree in chancery which is supported by the evidence will not be disturbed on review.

Bill in chancery. Error to the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed. Opinion filed June 16, 1911.

HARRIS F. WILLIAMS, for plaintiff in error; ELDON M. VOTAW, of counsel.

WILLIAM W. CASE, for defendant in error.

MR. JUSTICE BALDWIN delivered the opinion of the court.

On July 27, 1906, complainant filed a bill in the Superior Court of Cook county, asking an injunction to restrain defendants from selling, upon an alias writ of execution, certain real estate situated in Cook county and which he claimed to own, and to remove said judgment as an apparent cloud upon his title.

The court below granted a temporary injunction. After defendants had demurred to the bill, and the demurrer had been overruled, answers were filed. The cause was referred to a master, who, after hearing, found in favor of complainant, and the court approved the master's report, and entered a decree perpetually restraining the sale of the property on the judgment mentioned and declaring said judgment not a

cloud or lien upon complainant's title. Defendants bring the case here for review upon a writ of error.

From the evidence it appears that on December 11, 1893, Henry Lumpp acquired the lots in controversy by warranty deed from one Peter Daleiden, the consideration named in the deed being $1,600. Becoming of age, the following month, he was married, and proceeded to build a house upon the premises, into which he moved on March 14, 1894. In 1899, desiring to borrow money from the firm of A. Holinger & Co. with which to pay off a prior indebtedness on the property to one Weber, he and his wife executed a trust deed to A. Holinger, on November 2nd of that year, to secure a contemplated loan of $3,000. After this trust deed was executed, the loan company, from which the money was to be secured, decided that it did not wish to loan to Henry Lumpp, but it agreed to make the loan to his father, Lucas Lumpp, provided the property was conveyed to him. Thereupon Henry Lumpp and wife conveyed the premises by warranty deed on December 9, 1899, to Lucas Lumpp, the father, no consideration passing between them for such conveyance. It was orally agreed between Henry Lumpp and his father, Lucas, that the latter should advance sufficient money to the loan company to pay for certain sums in addition to the amount of the Weber indebtedness, and Henry Lumpp agreed to repay his father in monthly installments the amount so advanced, after which the father was to reconvey the property to him.

The trust deed made by Henry Lumpp and wife to Holinger was subsequently, on December 28, 1899, released, and the release was recorded January 8, 1900.

After the conveyance of December 9, 1899, from Henry Lumpp and wife to his father, Lucas Lumpp, the latter, with his wife, executed a trust deed to A. Holinger, which trust deed was dated back to November 1, 1899, in consideration of which Holinger & Co. paid off the prior indebtedness to Weber. No money passed from Holinger & Co. to Lucas Lumpp on account of this transaction, but Lucas Lumpp advanced to Holinger & Co. sufficient money which, with the proceeds of the loan from Holinger & Co., paid up the

indebtedness to Weber. Upon this sum, thus advanced by Lucas Lumpp, payments were made from time to time by Henry Lumpp, so that the total amount was repaid within a year.

On November 5, 1902, being then about to leave for California, Lucas Lumpp and wife executed a power of attorney to Joseph G. Schroer, making him their attorney in fact to convey real estate. This power of attorney was recorded January 3, 1903. On December 30, 1902, Lucas Lumpp and wife, by their said attorney in fact, conveyed the property back to Henry Lumpp by a warranty deed, no consideration passing between the parties.

The evidence seems to support the contention that Henry Lumpp, after building his house upon the premises in question, went into possession and occupation thereof in March, 1894, and continued in open and notorious possession and occupation thereof until the time of his conveyance to the complainant, Mathias Freres.

On November 24, 1902, Fred Santware, one of the defendants in this action, being then a creditor of Lucas Lumpp, recovered a judgment against him in the Superior Court of Cook county for $350 and costs. Upon this judgment execution was issued but was returned January 12, 1903, wholly unsatisfied.

Upon the application of his creditors, Lucas Lumpp was adjudged a bankrupt on February 20, 1903.

The notes to secure which the trust deed of November 1, 1899, was executed by Lucas Lumpp and wife to Arnold Holinger, came into possession of one Barbara Wickersheim. On June 27, 1905, default having been made in the payment of the principal note, she filed her bill in the Superior Court to foreclose the trust deed, and joined as defendants therein, Lucas Lumpp, Emma Lumpp, Henry Lumpp, Arnold Holinger, trustee, Fred Santware and others. In this proceeding Santware was personally served with process. The cause proceeded to a decree for $3,658, and directing the sale of said premises unless that amount were paid within three days. On December 15, 1905, the property was sold

by Granville W. Browning, master in chancery, to the complainant, Barbara Wickersheim, for $3,700, and the certificate of sale to her was recorded on December 20, 1905.

On January 30, 1906, Henry Lumpp and wife, conveyed by quit-claim to Mathias Freres, the complainant in this suit, for an alleged consideration of $4,200, and it was agreed that complainant should apply so much of the purchase price as was necessary, in making redemption from said foreclosure sale. This quit-claim deed was recorded on the day of its date. On January 31, 1906, complainant made redemption from the foreclosure sale by depositing with the master the sum of $3,728.37, and secured from the master a certificate of redemption, which was recorded on February 5, 1906.

On July 6, 1906, Fred Santware sued out an alias writ of execution upon the judgment obtained by him against Lucas Lumpp, and placed the writ in the hands of the defendant, Pease, Sheriff, with instructions to levy upon the premises in question for the purpose of having them sold in satisfaction of the judgment. Upon the levy being made, the sheriff duly advertised the property for sale.

When the cause was at issue, it was referred to John F. Holland, Esq., one of the masters in chancery of the Superior Court, with instructions to take evidence and report thereon, with his conclusion. In his report, the master states that he took the testimony of Henry Lumpp, Eugene Hildebrand, Mathias Freres, Charles H. Bowles, Fred Santware, Joseph G. Schroer and Kate S. Holmes as witnesses, and also admitted certain documentary evidence. From this oral and documentary evidence the master found the facts as stated above in this opinion, and concluded from such facts that the judgment in favor of Fred Santware did not become, and was not at any time, a lien upon the premises in question, and he recommended a decree in conformity with such report.

To this report the defendant filed objections which were allowed to stand as exceptions, and were duly heard by the trial judge. After being heard, such exceptions were overruled, the master's report confirmed, and a decree entered in conformity with the prayer of the bill.

In the consideration of this case we are reminded by counsel for plaintiff in error, that the decree cannot stand unless there is sufficient competent evidence in the record upon which to base it, and, in reaching our conclusions, we have not overlooked this elementary proposition.

Plaintiff in error practically concedes that, if the master and the court below were right in their finding that Lucas Lumpp held the mere legal title as trustee for his son, Henry Lumpp, the court did nor err in holding that the Santware judgment did not become a lien upon the property.

The contention of plaintiff in error is, however, that Henry Lumpp was not the owner of the property during the time the title was in his father's name, but, on the contrary, that the father actually owned the property and actually required the son Henry to pay rent to him for its use and occupancy. He also contends that the reconveyance to Henry was not in good faith, but was in fraud of the creditors of Lucas Lumpp, upon whose petition he was adjudged an involuntary bankrupt, as stated above.

He further contends that when Freres accepted the conveyance from Henry Lumpp he knew of the Santware judgment, and also knew that it was a lien against the property, and had stood as an undisputed lien for more than four years, and that, probably, the transfer of the title to Freres was not in good faith.

Plaintiff in error further contends that the court should have sustained the lien of the Santware judgment, and, at most, only allowed the complainant the difference between the amount of the judgment and the value of the property.

We have carefully gone over all the testimony shown by the record to have been heard by the master, and, while, in some respects, it is not entirely satisfactory, nevertheless, the master appears to have given both parties wide latitude in the hearing before him, and he was clearly in a better position to judge of the credibility of the witnesses than we can possibly be. No substantial purpose would be subserved by setting out at length the testimony heard by the master. It is sufficient to say that, after having carefully considered it all,

448    APPELLATE COURTS OF ILLINOIS.

A. M. Forbes Cartage Co. v. G. T. R. Co., 162 Ill. App. 448.

we think the fair weight of the evidence was in favor of the complainant, and that the master in so finding, and the court in entering a decree in conformity therewith, were fully justified.

The decree will, therefore, be affirmed.

*Affirmed.*